IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:09cr27-MHT |
| **EUGENE LAMAR PENDLETON** | ) | (WO) |

OPINION

Defendant Eugene Lamar Pendleton has been convicted of possession with intent to distribute marijuana; using and carrying firearms during and in relation to, and possession in furtherance of, a drug trafficking crime; and possessing a firearm after having previously been convicted of felony offenses. Prior to his convictions, the court rejected Pendleton's request to suppress evidence the police seized, pursuant to warrant, at 308 3rd Street, Montgomery, Alabama.  The court promised that a written opinion would follow, and this is now that opinion.

I. BACKGROUND

A.

In February 2009, Pendleton was charged in a three-count indictment with (1) possession with intent to distribute cocaine hydrochloride or "powder cocaine," 21 U.S.C. § 841(a)(1); (2) possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1); and (3) using and carrying firearms during and in relation to, and possession in furtherance of, a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(I). Count one was later dismissed on the motion of the government. Pendleton's trial ended in a mistrial in April because the jury could not reach a verdict.

In May 2009, Pendleton was charged in a four-count superseding indictment with (1) aiding and abetting in the possession with intent to distribute cocaine hydrochloride or "powder cocaine," 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (2) possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1); (3) using

and carrying firearms during and in relation to, and possession in furtherance of, a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(I); and (4) possessing a firearm while having previously been convicted of felony offenses, 18 U.S.C. § 922(g)(1). (The aiding-and-abetting possession-with-intent-to-distribute charge in count one of the superseding indictment and the dismissed possession-with-intent-to-distribute charge in count one of the original indictment were based on alleged events that occurred on different dates.)

Prior to the filing of the superseding indictment, Pendleton filed a motion to suppress certain evidence seized by the police. After conducting a hearing, a magistrate judge entered a recommendation that certain evidence (found at 308 3rd Street, Montgomery, Alabama) not be suppressed and certain other evidence (cash taken from Pendleton personally) be suppressed. Pendleton objected to the part of the recommendation that stated

that the 308 3rd Street evidence should not be suppressed.

In considering the magistrate judge's recommendation and Pendleton's objection, the court held another hearing. At Pendleton's second trial, the court then effectively adopted the magistrate judge's recommendation when the court allowed the introduction of the 308 3rd Street evidence and when the government conceded that the money found on Pendleton's person should not be admitted. As stated earlier, the court promised that a written opinion would follow explaining why it had admitted the 308 3rd Street evidence.

The jury found Pendleton not guilty of the first charge in the superseding indictment and guilty of the remaining three charges.

B.

The admissibility of the 308 3rd Street evidence turns on events that occurred on November 4 and 13, 2008, at both <u>303</u> 3rd Street and <u>308</u> 3rd Street.

On November 4, 2008, Montgomery Police Officer Roland Johnson arranged for a confidential informant to visit 303 3rd Street to purchase crack cocaine with police "buy money" from a known drug dealer with the alias "Ponytail." The informant was outfitted with a listening device by Johnson, who was parked some blocks away from 3rd Street. The informant visited Ponytail and asked to purchase $ 50 worth of crack cocaine.

The confidential informant observed Ponytail walk across the street to a white or beige house later identified as 308 3rd Street. The informant has offered conflicting testimony as to whether he saw Ponytail make contact with an individual the informant recognized as "L" or if Ponytail went into the house across the street

and returned with crack cocaine without the informant observing from whom Ponytail received the drugs.

Following the controlled buy, Officer Johnson drove on 3rd Street to retrieve the license plate numbers of those automobiles parked in front of 303 and 308 3rd Street and noticed a green 1993 Infiniti J-30, Alabama tag # B1939R, parked in front of 308 3rd Street. He later discovered that the car was registered to Pendleton.

On November 13, the same confidential informant visited 303 3rd Street to purchase more crack cocaine from Ponytail, this time with $ 40 of police buy money. This purchase was captured on video with surveillance equipment provided by Johnson, who again was parked some blocks away.

The 30-minute video depicts the confidential informant walking to 303 3rd Street where he makes contact with Ponytail.  Ponytail placed two telephone calls in an attempt to procure crack cocaine for the

6

informant.  The second call was successful and Ponytail told the informant that L was coming from several blocks away.  The informant and Ponytail waited for about ten minutes.

L arrived and sold Ponytail a small quantity of crack cocaine and immediately exited 303 3rd Street.  Fifty seconds after L left, the confidential informant left 303 3rd Street and watched L return across the street to 308 3rd Street.

On December 19, a city judge issued a warrant to search 308 3rd Street for documents related to the sale of drugs.  The search was conducted on December 24, and marijuana, two firearms, and documents bearing Pendleton's name were seized.

In an affidavit in support of the search warrant, Officer Johnson stated, among other things, that he believed that drug records and other items related to drug trafficking were being stored at 308 3rd Street; and that it is common for narcotics traffickers to maintain

7

books, records, and other documents relating to the transportation and sale of controlled substances within their residences, but that drug dealers commonly sell controlled substances at locations other than their own residences to decrease the risk of loss of goods. Johnson further swore that L, the person from whom Ponytail obtained drugs on November 4 and 13, was Pendleton. He then concluded that he had probable cause to believe that documents related to the sale of drugs were present at 308 3rd Street.[1]

However, at Pendleton's first trial, the government and Pendleton agreed that L (the drug dealer depicted in the November 13 video) was, in fact, not Pendleton. Johnson conceded that he was mistaken in his affidavit and that Pendleton was misidentified as L for both the November 4 and 13 drug buys.

---

   1.  The relevant part of the affidavit is attached an appendix to this opinion.

8

## II. DISCUSSION

"Where a challenge is made to the validity of a warrant affidavit ..., [the court] must consider: (1) whether the alleged misstatements in the affidavit were made either intentionally or in reckless disregard for the truth and, if so, (2) whether, after deleting the misstatements, the affidavit is insufficient to establish probable cause." United States v. Kirk, 781 F.2d 1498, 1502 (11th Cir. 1986) (citing Franks v. Delaware, 438 U.S. 154 (1978)). Pendleton asserts that Officer Johnson knowingly or with reckless disregard for the truth provided the municipal judge with false information in support of the search warrant for 308 3rd Street. Upon completing a de novo review of the record, including the testimony from both Officer Johnson and his confidential informant, the court agrees with Pendleton, and so finds, that Johnson acted with reckless disregard for the truth in the affidavit he submitted to the city judge in support of the search warrant for 308 3rd Street.

A.

The evidence shows that, in two critical paragraphs in his affidavit, Officer Johnson misrepresented that, on November 4 and 13, 2008, Pendleton sold crack cocaine to the confidential informant (identified as "A" in the affidavit) and Ponytail. The two paragraphs are follows:

> "'A' observed 'Ponytail' walked across the street to 308 3rd Street and knock on the door. 'A' observed 'Ponytail' made contact with a black male subject later identified as Eugene Lamar Pendleton, aka 'L'. 'A' observed Pendleton and 'Ponytail' make a hand to hand transaction. Ponytail immediately walked over to and gave 'A' two, off white, rock-like substances believed to be crack cocaine.
>
> ***
>
> "Further probable cause being that in the month of November 2008 'A' under the control of this affiant went to 303 3rd Street (Boylston) and purchased a quantity of crack cocaine from B/M Eugene Pendleton. 'A' following the controlled drug buy observed Pendleton walk to 308 3rd Street (Boylston) and go inside."

10

At the August 4 hearing, Officer Johnson, the confidential informant, and the government all agreed that Pendleton was not the individual from whom Ponytail obtained drugs on November 4, nor the person depicted in the November 13 video. The confidential informant stated that L, the person who sold Ponytail drugs, was the same man on both November 4 and November 13, though he did not get a good look at the man on November 4.

The court is also convinced that Officer Johnson misrepresented Pendleton's involvement with reckless disregard for the truth. The physical differences between Pendleton and L are substantial. In a mug shot, which Officer Johnson had before he submitted his affidavit, Pendleton is described as being five-feet seven-inches tall and weighing 150 pounds. On the other hand, L, as seen in the video, is taller than Ponytail, who Officer Johnson knew to be six-feet tall, and he is also clearly well over 150 pounds, as he has a much larger frame than Ponytail, who is listed as 165 pounds.

11

There are also clear differences between Pendleton and L as to build, facial features, and facial structure. This is especially evident when comparing Pendleton's mug shot and a still of L in the video.

Admittedly, the court stated at Pendleton's first trial, after watching the November 13 video, that,

> "From my very cursory and admittedly very short review of the video, I could not conclude that the defendant was not the guy in the video."

Transcript (Doc. No. 72), p. 3. However, the court added that: "I also could not conclude that he is the guy. I couldn't tell." Id. Like the court, Officer Johnson had no basis to conclude that Pendleton was the person who sold the drugs to Ponytail in the November 13 video.

Therefore, the court finds that Officer Johnson had no basis whatsoever to swear to the city judge that there was probable cause to believe that Pendleton was the person who had sold crack cocaine to Ponytail on November

12

4 and 13.[2] See United States v. Kirk, 781 F.2d 1498 (11th Cir. 1986) (holding that evidence supported district court's finding that officers acted with reckless disregard for the truth in misidentifying a suspect in affidavit).

B.

Pendleton also contends that Officer Johnson made a misrepresentation in another paragraph in his affidavit, as follows:

> "'A' has given information that has proven reliable in the past that has resulted in the seizure of Trafficking amount of narcotics and several drug arrests. The information given by the

---

2. In various hearings before this court, the confidential informant has given dramatically differing testimony as to whether he even knew Pendleton before the first trial. As a result, the court cannot, applying any burden of proof, draw any conclusions as to what the confidential informant knew about Pendleton. However, the court is convinced from the confidential informant's and Officer Johnson's testimony that the confidential informant provided nothing to Officer Johnson that was sufficiently reliable to establish probable cause to believe that Pendleton was the person who gave drugs to Ponytail on November 4 and 13.

13

>informant has been confirmed by this affiant and other members of the Narcotics Bureau."

Pendleton challenges the truthfulness of only the second sentence of this paragraph, for the information in the first sentence is undisputed, as the confidential information has a long history of working for the Montgomery police.

When reading the second sentence, the challenged statement appears contradictory to Officer Johnson's sworn testimony: Johnson testified on August 4 that he did not witness either of the controlled buys conducted by the confidential informant and that he listened to the November 4 buy over a listening device and watched a depiction of the November 13 buy from the informant's video. While Johnson was able to hear the November 4 buy and watch a video depiction of the November 13 buy, he did not personally witness either transaction nor did any other Narcotics Bureau officer. However, read as a whole, the paragraph is ambiguous. It is unclear whether

14

the second sentence refers to the informant's reliability in Pendleton's case or if it refers to his reliability in all previous cases in which he participated as a paid informant.  Because of this ambiguity, the court does not find that this statement was false or made with a reckless disregard for the truth.

C.

Because the court has found that Officer Johnson acted with reckless disregard for the truth in swearing in his affidavit that Pendleton was the person from whom Ponytail obtained drugs on November 4 and 13, the court will excise all references to Pendleton from the affidavit and will determine whether probable cause remained to issue a warrant to search 308 3rd Street for documents related to the sale of drugs.  "The traditional standard for review of a probable-cause determination is whether a substantial basis exists for the conclusion that a probability existed that evidence of a crime would

be found in the particular place sought to be searched." Kirk, 781 F.2d at 1505 (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)).

It must be remembered that the issue is not whether, absent the offending language, there was probable cause to search Pendleton but rather whether, absent the offending language, there was probable cause to search 308 3rd Street; thus the issue is not whether, absent the offending language, there was probable cause to conclude that Pendleton was involved in drug activity but rather whether, absent the offending language, there was probable cause to conclude 308 3rd Street was involved in such activity. After excising the offending language from the affidavit, the court holds that the affidavit was still sufficient to provide a "substantial basis" from which to find that Officer Johnson had probable cause to believe that documents related to sale of drugs might be found at 308 3rd Street: The confidential informant insisted that the person who sold Ponytail the

crack cocaine on both November 4 and November 13 came from 308 3rd Street. Therefore, Officer Johnson's affidavit, even in its redacted form, was sufficient to support a finding of probable cause. See Kirk, 781 F.2d at 1505-06 ("We hold that the affidavit in redacted form is sufficient to provide a 'substantial basis' from which to conclude that the agents had probable cause to believe that cocaine might be found in the Kirk residence.").

***

In conclusion, the court properly found, at Pendleton's second trial, that the evidence seized from 308 3rd Street, Montgomery, Alabama should not be suppressed.

DONE, this the 1st day of July, 2010.

                                      /s/ Myron H. Thompson
                              UNITED STATES DISTRICT JUDGE